UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRED C. KRIEGEL,

                              Plaintiff,

            – against –

KATHLEEN DONELLI, as Preliminary Executor
under the Last Will and Testament of Richard A.
Donelli,

                              Defendant.

**OPINION AND ORDER**

11 Civ. 9160 (ER)

Ramos, D.J.:

        This diversity action arises from the sale of a dental practice in Hartsdale, New York after

the death of its owner, Dr. Richard A. Donelli ("Dr. Donelli").  On August 25, 2011, Fred C.

Kriegel ("Plaintiff" or "Dr. Kriegel") purchased the practice from Kathleen Donelli ("Defendant"

or "Mrs. Donelli"), Dr. Donelli's widow and the executor of his estate.  On December 14, 2011,

Dr. Kriegel commenced this lawsuit alleging that Defendant induced him to buy the practice by

failing to disclose that Tara Magnotta, a valued dental hygienist and long-term employee,

intended to leave the practice if Plaintiff purchased it.  Indeed, Ms. Magnotta resigned soon after

Plaintiff assumed control of the practice.

        Dr. Kriegel seeks rescission of the Asset Purchase Agreement ("APA") through which he

acquired the practice, or alternatively, rescissionary damages, under breach of contract (First

Cause of Action) and fraud in the inducement (Second Cause of Action) theories of New York

law.  Plaintiff claims that Defendant's non-disclosure breached a warranty in the APA which

specifically required the Defendant to affirm that, to her knowledge, there was "no material fact

directly relating to the business operations, conditions, or prospects of the Practice that materially and adversely affects the same, of which Purchaser [the Plaintiff] has not been made aware."  Plaintiff also claims that Defendant misrepresented that "employees of the Practice would stay on after the sale was consummated."  Compl. ¶¶ 4-39, Doc. 1.

Currently pending before the Court is Defendant's motion for summary judgment on all claims, pursuant to Fed. R. Civ. P. 56.  Doc. 13.  Mrs. Donelli principally asserts that she did not make any material misrepresentation or omission, that Dr. Kriegel's fraud claim must be dismissed as it is duplicative of his contract claim, that his alleged reliance on her purported misrepresentations about Ms. Magnotta's continued employment is unreasonable as a matter of law, and that Dr. Kriegel is not entitled to rescission or more than nominal damages.  Defendant also seeks reasonable attorney's fees.

For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

## I.    Factual Background

Unless otherwise noted, the following facts, taken from the parties' Local Rule 56.1 Statements, are undisputed.

### A.  The Sale of Dr. Donelli's Dental Practice to Dr. Kriegel

Dr. Donelli owned and operated a dental practice known as Hartsdale Dental Group, P.C., d/b/a RD Dental Associates, in Hartsdale, New York ("RD Dental").  Def.'s 56.1 Stmt. ¶ 3, Doc. 16.  Dr. Donelli unexpectedly passed away on July 24, 2011.  *Id.* ¶¶ 1-2.  Defendant Kathleen Donelli, his wife, served as the executor of his estate.  Defendant sought to sell RD Dental soon after her husband's death.  Mrs. Donelli's son, Charles Mansfield, assisted her in that regard by identifying and negotiating with potential buyers.  *Id.* ¶ 5.  Mr. Mansfield also assisted Defendant

by managing the daily affairs of the practice and recruiting dentists to work there on a *per diem* basis.  Def.'s Resp. Pl.'s 56.1 Stmt. Add'l Facts ¶ 2, Doc. 23.

Dr. Kriegel, the Plaintiff, is also a dentist.  Feureisen Decl. Ex. A, Doc. 14.  Dr. Kriegel met Dr. Donelli in the 1980s through the Scarsdale Dental Association and spoke with him on occasion at the Scarsdale Country Club.  Kriegel Aff. ¶ 4, Doc. 17.  Dr. Kriegel claims that he invited Dr. Donelli to have lunch with him on June 18, 2011 to discuss "a potential business relationship."  *Id.*  Dr. Kriegel learned that Dr. Donelli passed away when he called Dr. Donelli's office on July 28, 2011.  *Id.* ¶ 5.  Approximately one week after Dr. Donelli's death, Plaintiff contacted Mr. Mansfield and offered to help finish some open cases at RD Dental.  Def.'s Resp. Pl.'s 56.1 Stmt. Add'l Facts ¶ 3.  In August 2011, Dr. Kriegel began working at RD Dental on a *pro bono*, limited basis (Def.'s 56.1 Stmt. ¶ 8; Pl.'s 56.1 Stmt. Add'l Facts ¶ 10, Doc. 20; Kriegel Aff. ¶ 6) and became interested in purchasing RD Dental.[1]  Pl.'s Cntrstmt. ¶ 9, Doc. 20.  Two other dentists had also been considering purchasing RD Dental; however, those deals fell through.  Def.'s 56.1 Stmt. ¶ 7.  Upon learning from Mr. Mansfield that a potential deal for the sale of the practice had failed, Dr. Kriegel made an offer to purchase RD Dental for $300,000.00.  Kriegel Aff. ¶ 8; Pl.'s Stmt. Add'l Facts ¶ 13.

Mrs. Donelli met with Dr. Kriegel to discuss his offer on August 21, 2011.  Mrs. Donelli told Dr. Kriegel that she would accept his offer, but specified that the deal "could not have any financial contingencies and had to be consummated by … August 25[, 2011], or the acceptance of the offer would be withdrawn."  Def.'s Resp. Pl.'s 56.1 Stmt. Add'l Facts ¶¶ 14-15.  Between

---

[1] Dr. Kriegel claims, and Mrs. Donelli disputes, that he had no interest in purchasing the practice during his brief tenure as a volunteer.  Pl.'s 56.1 Stmt. Add'l Facts ¶ 10 (citing Kriegel Aff. ¶ 6); Def.'s Resp. Pl.'s 56.1 Stmt. Add'l Facts ¶ 10.  However, Dr. Kriegel agrees with Defendant's statement that he "worked at RD Dental three or four days before expressing interest in purchasing the practice …."  Pl.'s Cntrstmt. ¶ 9.

August 21 and August 25, 2011, Dr. Kriegel communicated with Mr. Mansfield "almost daily" regarding the purchase of RD Dental.  *Id.* ¶ 19.  During that time, Dr. Kriegel also signed non-solicitation and confidentiality agreements with RD Dental, directed his accountant to review the practice's tax history and billing system, and retained attorneys to advise him on his planned purchase.  Def.'s 56.1 Stmt. ¶¶ 10-12.

As part of the contract for the sale of RD Dental, Dr. Kriegel specifically wanted to obtain a non-competition agreement from Tara Magnotta, a dental hygienist who, as of August 2011, had been employed with the practice for approximately twenty years.  Def.'s 56.1 Stmt. ¶ 16; Kriegel Aff. ¶ 12.  Dr. Kriegel did not seek to obtain non-competition agreements from any other staff members.  *Id.*  Unbeknownst to Dr. Kriegel, on August 4, 2011, Ms. Magnotta had sent an email to Defendant stating that she did not want her name or her continued employment with RD Dental to be included in any contracts for its sale.  Def.'s Resp. Pl.'s 56.1 Stmt. Add'l Facts ¶ 9; Harfenist Decl. Opp. Def.'s Mot. Summ. J. ("Harfenist Decl.") Ex. F, Doc. 18.  On an unspecified date that August, prior to August 25, 2011, Dr. Kriegel claims, and Mrs. Donelli disputes, that he voiced to Mr. Mansfield a concern that "a significant portion of the patients" at RD Dental would leave if Ms. Magnotta departed and began working elsewhere.  Def.'s Resp. Pl.'s 56.1 Stmt. Add'l Facts ¶ 20 (citing Kriegel Aff. ¶ 12).  Mrs. Donelli acknowledges that Dr. Kriegel was concerned that Ms. Magnotta might leave the practice, but admits only that Dr. Kriegel expressed to Mr. Mansfield that Ms. Magnotta "may not conform to his style of practicing dentistry."  *Id.*

The parties agree that Mr. Mansfield advised Plaintiff that Ms. Magnotta said she would stay at RD Dental for at least thirty days after the sale of the practice.  Def.'s Resp. Pl.'s 56.1

4

Stmt. Add'l Facts ¶ 21.[2]   Dr. Kriegel further claims, and Mrs. Donelli disputes, that Mr. Mansfield "gave [Dr. Kriegel] his personal assurance that he had spoken with [Ms. Magnotta] and the other RD Dental staff members," and that "they were all loyal to the Practice, loved the patients and *would never leave*, especially because they were being paid such high salaries." *Id.* (citing Kriegel Aff. ¶ 12 (emphasis added)).

Dr. Kriegel concedes that he did not ever directly discuss Ms. Magnotta's continued employment at RD Dental with her prior to his purchase of the practice.[3]   However, during negotiations regarding the final terms of the sale on the closing date, August 25, 2011, Dr. Kriegel formally demanded that Mrs. Donelli agree to "cause [Ms.] Magnotta to sign a non-compete agreement," and "that he receive a non-compete from Ms. Magnotta as part of the contract of sale of RD Dental."   Def.'s 56.1 Stmt. ¶ 15.   In response, Mrs. Donelli "unequivocally refused to agree to have Ms. Magnotta sign [a] non-compete agreement," and "told [Dr.] Kriegel that his demand for a non-compete from Ms. Magnotta was a deal breaker." *Id.*  Mrs. Donelli informed Dr. Kriegel that Ms. Magnotta was an at-will employee and, as such, could not be forced to do anything. *Id.* ¶ 17.   Indeed, Mrs. Donelli "stormed out of the room" for a time after Plaintiff requested the non-competition agreement.   Kriegel Decl. ¶ 13.

---

[2] At his deposition, Mr. Mansfield testified that, prior to August 25, 2011, Ms. Magnotta told him that "she would stay for a month no matter who bought the practice."  Feureisen Reply Decl. Ex. B (Mansfield Dep. 92:6 – 94:22), Doc. 22.  Mr. Mansfield further testified that he recalled meeting with Plaintiff in person and telling him that Ms. Magnotta would "give [Plaintiff] a chance," and that she "had indicated that she would stay for 30 days no matter what." *Id.* at 111:2 – 111:25.

[3] It is undisputed that, during the time that he worked at RD Dental, Plaintiff "never asked the staff any questions about the future of the practice or their employment there."  Pl.'s Stmt. Add'l Facts ¶ 11.  In addition, Dr. Kriegel testified that he did not have any discussion with Ms. Magnotta regarding a non-competition agreement.  *See* Feureisen Decl. Ex. M (Kriegel Dep. 77:12 – 77:16).

Mrs. Donelli ultimately returned to the meeting,[4] Pl.'s Opp. 5, Doc. 19 (citing Kriegel Decl. ¶ 13), and Plaintiff ultimately did not insist on a non-competition agreement for Ms. Magnotta.  Feureisen Reply Decl. Ex. B. (Mansfield Dep. 102:1 – 103:8); Feureisen Decl. Ex. M (Kriegel Dep. 73:11 – 73:21) (testimony acknowledging that executed APA did not include non-competition and non-solicitation agreements for RD Dental employees).   Notwithstanding his inability to obtain a non-competition agreement for Ms. Magnotta from Mrs. Donelli, Dr. Kriegel signed the APA and acquired RD Dental on August 25, 2011.  Pl.'s Cntrstmt. ¶ 19; Kriegel Decl. ¶ 13; Feureisen Decl. Ex. A (APA).  Among other things, the APA states that:

> Effective upon the Closing Date, [RD Dental] shall terminate the employment of all Practice personnel, it being understood that the Purchaser shall be free to employ or retain any or all such personnel at Purchaser's sole discretion.  [RD Dental] shall be responsible for all salary, benefits obligations and any other employment liabilities accruing up to the Closing Date and Purchaser shall be responsible for the same accruing on or after the Closing Date with respect to such personnel hired or retained by Purchaser.

Feureisen Decl. Ex. A (APA § 1.7).  Section 12 of the Rider to the APA further specifies that "Seller agrees to cooperate with Purchaser in retaining as many of the existing employees of the Practice as Purchaser wishes to retain.  However, Purchaser is not obligated in any way to continue the employment of any of Seller's employees."  Feureisen Decl. Ex. A (Rider § 12).  Additionally, and of particular relevance to Plaintiff's claims, Section 10(c) of the Rider to the APA ("Section 10(c)")[5] specifies that:

---

[4] Mr. Mansfield, who was initially present at the meeting but departed soon after his mother "stormed out," testified that he "left the closing thinking that the closing had not happened."  Feureisen Reply Decl. Ex. B. (Mansfield Dep. 102:19 – 103:8).  When Mrs. Donelli returned to the closing, presumably, it was without Mr. Mansfield.

[5] On its face, the Rider states that it is "annexed to and made part of the [APA] by and between Seller and Purchaser dated August 25, 2011," and that "[i]n the event of any conflict between the provisions of the [APA] and this Rider, this Rider shall be deemed to be controlling as to the subject matter of such provision(s)."  Feureisen Decl. Ex. A (Rider at 1).  The signature page of the Rider does not include a date.  However, Plaintiff's Opposition implies that counsel negotiated the Rider on the same day (August 25, 2011).  Pl.'s Opp. 5.

> No statement, warranty or representation by Seller in this Agreement contains any untrue statement of material fact or omits to state any material fact necessary in order to make the statements made, in light of the circumstances under which such statements are made, not misleading.  To the knowledge of the Seller, there is no material fact directly relating to the business operations, conditions, or prospects of the Practice [RD Dental] that materially and adversely affects the same, of which Purchaser has not been made aware.

Feureisen Decl. Ex. A (Rider § 10(c)).

Dr. Kriegel formally assumed control of RD Dental on August 29, 2011.  Def.'s 56.1 Stmt. ¶ 20.  Plaintiff claims, and Defendant disputes, that, after he signed the APA on August 25, 2011, but before he assumed control of the practice on August 29, 2011, he sought and obtained additional "assurances" from Mr. Mansfield that Ms. Magnotta did not intend to leave RD Dental.[6]   Kriegel Aff. ¶ 14; Pl.'s 56.1 Stmt. Add'l Facts ¶ 28.  Mrs. Donelli claims that Mr. Mansfield only offered to ask Ms. Magnotta if she would sign a non-compete agreement.  Def.'s Resp. Pl.'s 56.1 Stmt. Add'l Facts ¶ 28.

On September 2, 2011, Ms. Magnotta gave two weeks' notice to Dr. Kriegel via email. Def.'s 56.1 Stmt. ¶ 25; Kriegel Aff ¶ 14.  While Ms. Magnotta offered to work for Plaintiff for an additional two weeks after her resignation date, he asked her not to return.  Def.'s 56.1 Stmt. ¶ 25.

Plaintiff and Defendant sharply dispute whether, *before* Dr. Kriegel purchased RD Dental on August 25, 2011, (1) Ms. Magnotta intended to leave RD Dental, and (2) Defendant knew of, but failed to disclose, Ms. Magnotta's intention to depart.  Mrs. Donelli contends, and Dr. Kriegel disputes, that "Ms. Magnotta did not know whether she would stay or leave RD Dental

---

[6] Although neither party discusses it in their briefing papers, Section 12 of the Rider to the APA, titled "Seller's Employees," also provides that "Seller agrees to cooperate with Purchaser in retaining as many of the existing employees of the Practice as Purchaser wishes to retain.  However, Purchaser is not obligated in any way to continue the employment of any of Seller's employees."  Feureisen Decl. Ex. A (Rider § 12).

after the sale, or for how long she might stay."  Def.'s Mem. L. 10, Doc. 15.  According to Mrs. Donelli, at the time of the sale, Ms. Magnotta "had an open mind" about staying at RD Dental (Def.'s 56.1 Stmt. ¶ 23; Feureisen Decl. Ex. L (Magnotta Dep. 136:9 – 136:20)), but "several incidents" that Ms. Magnotta observed between Plaintiff and patients during the week of August 29, 2011 caused her to resign.  Def.'s 56.1 Stmt. ¶¶ 24, 26.  Regarding her own knowledge of Ms. Magnotta's intention, Defendant testified that she never had "any discussions with Ms. Magnotta where she spoke … [about] the ramifications of what would happen if Dr. Kriegel were to purchase [RD Dental]."  Feureisen Reply Decl. Ex. A (Donelli Dep. 74:22 – 75:3).  Defendant also testified that, prior to August 25, 2011, she had no reason to believe that Ms. Magnotta harbored "negative feelings" toward Plaintiff (*id.* at 74:18 – 74:21), and claims that Ms. Magnotta never "at any point" advised Defendant or Mr. Mansfield that she intended to leave.  Def.'s Mem. L. 9 n.3; Def.'s Resp. Pl.'s 56.1 Stmt. Add'l Facts ¶ 7.

Contrariwise, Dr. Kriegel asserts that Ms. Magnotta informed Mrs. Donelli and Mr. Mansfield that she did not intend to stay at RD Dental—and that Mrs. Donelli failed to apprise him of this fact prior to the sale.  Def.'s Resp. Pl.'s 56.1 Stmt. Add'l Facts ¶ 6.  Plaintiff claims that, contrary to Mr. Mansfield's "assurances," Ms. Magnotta "had several conversations with [him], both *before and after* the signing of the APA, where she told [Mr. Mansfield] that her intentions were *not* to stay if [Plaintiff] purchased the practice."  Pl.'s 56.1 Stmt. Add'l Facts ¶ 7 (emphasis added).  Dr. Kriegel also claims that, after Ms. Magnotta's resignation, other RD Dental staff members told him that Ms. Magnotta "had been vocal about the fact that if I purchased the practice she would not stay on at RD Dental."  Kriegel Aff. ¶ 16.

8

As for Ms. Magnotta's own expression of her intentions, she signed an affidavit in March 2013,[7] in which she stated that, "[o]nce I learned that [Dr. Kriegel] was the purchaser [of RD Dental], I advised [Defendant] and Charles [Mansfield] that I would stay on only until a sale is consummated but no longer."    Feureisen Decl. Ex. K (Magnotta Aff. ¶ 8).[8]    Then, at her deposition in July 2013, Ms. Magnotta testified as follows concerning her plans to stay at RD Dental:

> Q.    So is it fair to say that you told [Defendant] that you weren't sure what your plans were?
>
> A.    I told them that I would stay through the sale of the contract.   My intentions were to – not to stay.   I couldn't give a specific number of days, how long I was going to stay.
>
> Q.    So did you say you were going to stay a day?
>
> A.    In that conversation, no.
>
> Q.    Did you say you were going to stay a month?
>
> A.    No, I never said a specific time.   …
>
> Q.    Now, this is the same conversation that you described earlier which took place after the contracts were signed; isn't that correct?
>
> A.     Yes.
>
> Q.    And what day on the weekend did this conversation take place?
>
> A.    I believe it was Saturday.
>
> …
>
> Q.    And during that first week [after Plaintiff bought the practice] you had an open mind; isn't that right?

---

[7] This affidavit pertains to a separate action filed by Dr. Kriegel against Ms. Magnotta in New York State Supreme Court in December of 2011, in which he similarly alleged that Ms. Magnotta intended to leave RD Dental immediately following the sale of the practice.  Feureisen Decl. Ex. H (*Kriegel v. Magnotta* Compl. ¶¶ 10, 12).

[8] The precise date on which Ms. Magnotta learned that Dr. Kriegel would be purchasing RD Dental is unclear.

A.     Yes.

Q.     And after that first week you became certain that you couldn't work with Dr. Kriegel; isn't that correct?

A.     An incident happened with two patients that – at that moment that confirmed my fact that I wasn't going to be able to work there.

Q.     But you did go into that first week with an open mind?

A.     Right. …

Q.     Once you learned … that Dr. Kriegel was going to purchase the practice, did you have any intention to stay long-term with the practice?

A.     What is your definition of long-term?

Q.     Had you planned to stay there more than a month?

A.     No. … I had never put a time limit in my head of how long I was planning on staying.

Q.     But you were convinced that you were not going to stay?

A.     Yes.

Harfenist Decl. Ex. E (Magnotta Dep. 31:3 – 31:24); Feureisen Decl. Ex. L (Magnotta Dep. 136:9 – 138:1).  Ms. Magnotta also testified that Defendant told her that "[her] longevity with the practice was a selling point" and that she would be "partly a key to the retention of patients." Harfenist Decl. Ex. F (Magnotta Dep. 19:4 – 19:23).  Ms. Magnotta further testified that, in the weeks leading up to the sale, she told Mr. Mansfield that she didn't think that Plaintiff was a "good choice" for a potential buyer.  Harfenist Decl. Ex. E (Magnotta Dep. 35:11 – 35:23).

Finally, the parties dispute whether Defendant ever offered Ms. Magnotta $10,000.00 to stay at RD Dental.  Dr. Kriegel testified that, at some point after Ms. Magnotta resigned, Mr. Mansfield "indicated to [him] that [Defendant had] offered [Ms. Magnotta] $10,000" to stay at

the practice until after Plaintiff purchased it, and Ms. Magnotta declined the offer.  Def.'s Resp.

Pl.'s 56.1 Stmt. Add'l Facts ¶ 33; Harfenist Decl. Ex. J (Kriegel Dep. 79:2 – 79:24).  Ms.

Magnotta, however, testified that she was "absolutely" never offered $10,000 to stay with the

practice.  Feureisen Reply Decl. Ex. C (Magnotta Dep. 55:1 – 55:7).

## II.     Defendant's Summary Judgment Motion

### A.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno*

*v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint*

*Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might

affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary

judgment is first responsible for demonstrating the absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F.

Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v.*

*Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the

light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.

2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However,

in opposing a motion for summary judgment, the non-moving party may not rely on unsupported

assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

It is well-settled that "credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  Accordingly, "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000)).

### B.  Plaintiff's Breach of Contract (Warranty) Claim (First Cause of Action)

Plaintiff claims that Defendant breached the warranty provision in Section 10(c).  Specifically, Dr. Kriegel alleges that Mrs. Donelli failed to disclose the following material facts: (1) Ms. Magnotta had been moving patients to other practices before Dr. Donelli's death; (2) Ms. Magnotta intended to leave the practice if Dr. Kriegel purchased it; (3) Mrs. Donelli attempted to pay Ms. Magnotta to remain at the practice for a certain time period after the sale; (4) "non-competition agreements signed with prospective purchasers specifically excluded the hiring of Ms. Magnotta"; and (5) Ms. Magnotta had access to the practice's e-mail system and all of the

patients' contact information and files.  Compl. ¶ 27.  Dr. Kriegel contends that, had he known any of the foregoing facts, he would have never agreed to purchase RD Dental.  *Id.* ¶¶ 28-32; Pl.'s Opp. 13.

As articulated by Judge Learned Hand, a warranty is "an assurance by one party to a contract of the existence of a fact upon which the other party may rely."  *CBS, Inc. v. Ziff-Davis Publ. Co.*, 75 N.Y.2d 496, 503, 554 N.Y.S.2d 449, 553 N.E.2d 997 (N.Y. 1990) (quoting *Metropolitan Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946)).  Because it is "intended precisely to relieve the promisee of any duty to ascertain the fact for himself," a warranty "amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past."  *Id.*  To prevail on a breach of warranty claim under New York law, a plaintiff must prove that:  (1) he entered into a contract with the defendant; "(2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant."  *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (citing *Ziff-Davis*, 75 N.Y.2d at 501–06, 553 N.E.2d 997; *Ainger v. Michigan Gen. Corp.*, 476 F. Supp. 1209, 1227 (S.D.N.Y. 1979), *aff'd*, 632 F.2d 1025 (2d Cir. 1980)).

 "In contrast to the reliance required to make out a claim for fraud, the general rule is that a buyer may enforce an express warranty even if it had reason to know that the warranted facts were untrue."  *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) (hereinafter "*Merrill Lynch*").  However, "where the seller discloses up front the inaccuracy of certain of his warranties, it cannot be said that the buyer—absent the express preservation of his rights—believed he was purchasing the seller's promise as to the truth of the warranties."  *Rogath v. Siebenmann*, 129 F.3d 261, 264-65 (2d Cir. 1997) (citing *Galli v. Metz,*

13

973 F.2d 145, 151 (2d Cir. 1992)).[9] Thus, "what the buyer knew and, most importantly, whether he got that knowledge from the seller are the critical questions." *Rogath*, 129 F.3d at 264-66 (citing *Galli*, 973 F.2d at 151) (denying summary judgment where factual ambiguity persisted regarding whether seller of painting informed buyer regarding challenges to its authenticity, and holding that buyer's breach of warranty claims would only be deemed waived upon a showing that the seller himself, and not a third party, informed the buyer of doubts concerning the painting's legitimacy).

### 1. The Plaintiff Can Bring A Breach of Contract Action Based on the Plain Language of the Warranty.

Mrs. Donelli asserts that a breach of contract claim cannot be premised on a "broad contractual duty to disclose all material facts." Thus, because neither the APA nor the Rider mentions Ms. Magnotta, non-disclosure of Ms. Magnotta's intentions—whatever they may have been—cannot form the basis of a breach of warranty claim. Def.'s Mem. L. 17 (citing *Siemens Solar Indus. v. Atl. Richfield Co.*, 251 A.D.2d 82, 673 N.Y.S.2d 674 (App. Div. 1st Dep't 1998)).

The Court finds that, contrary to Mrs. Donelli's assertions, Plaintiff may bring a breach of warranty claim based upon the language used in Section 10(c). *Siemens Solar Indus. v. Atl. Richfield Co.*, relied upon by Defendant, does not compel a different conclusion. In that case, the Appellate Division, First Department held that the plaintiff's breach of warranty claim lacked merit because the contract at issue "generally warrant[ed] that the representations contained in the agreement and its accompanying schedules d[id] not omit any material facts, but *nowhere mention[ed] the specific matter that [was] the subject of the alleged nondisclosure.*" 251 A.D.2d

---

[9] Although the buyer may preserve his rights "by expressly stating that disputes regarding the accuracy of the seller's warranties are unresolved, and that by signing the agreement the buyer does not waive any rights to enforce the terms of the agreement," *Rogath*, 129 F.3d at 264-65 (citing *Galli*, 973 F.2d at 150), here, there is no suggestion that Dr. Kriegel preserved his rights through such a provision in the APA.

82, 673 N.Y.S.2d 674 (emphasis added) (citations omitted).   The *Siemens Solar* court distinguished *CBS Inc. v. Ziff–Davis Publishing Co.*, upon which the plaintiff's argument had rested, on the ground that the contract provision there expressly warranted an existing specified fact, which was the subject matter of the lawsuit.[10]

Here, while Section 10(c) does not specifically reference Ms. Magnotta, Defendant did specifically warrant that, at the time of the sale, she knew of "no material fact directly relating to the business operations, conditions, or prospects of the Practice that materially and adversely affects the same, of which Purchaser ha[d] not been made aware." *See* Rider § 10(c).   Thus, unlike in *Siemens Solar*, the subject matter warranted by Defendant arguably includes the subject of the alleged non-disclosure:   factors affecting the business operations, conditions, and prospects of the practice.[11]   To the extent that Ms. Magnotta's desire to immediately depart RD

---

[10] In *Ziff-Davis*, the defendant, Ziff-Davis, specifically warranted "… that the audited income and expense report of the businesses for the 1984 fiscal year, which had been previously provided to CBS in the offering circular, had 'been prepared in accordance with generally accepted accounting principles'" and "that from July 31, 1984 until the closing, there had 'not been any material adverse change in Seller's business of publishing and distributing the Publications, taken as a whole.'"   *See* 75 N.Y.2d 496, 554 N.Y.S.2d 449, 553 N.E.2d 997.

[11] Post-*Siemens Solar* case law sheds little light on the level of specificity that New York courts should require in warranty language in order to sustain a claim for breach of warranty.   However, courts have recognized breach of warranty actions premised upon language similar to that at issue here.   *See Gordon P. Getty Family Trust v. Peltz*, No. 93 Civ. 3162 (DAB), 1998 WL 148425, at *10 (S.D.N.Y. Mar. 27, 1998) (denying summary judgment on breach of warranty claim premised on warranties that:  (1) the transaction would not "conflict with or result in any breach or violation of ... any law, statute, regulation, order, judgment or decree applicable to [the company]"; (2) there had been no material adverse change since 1990 in the company's "assets, properties, business, operations or condition (financial or otherwise)"; and (3) none of the documents provided by defendants to plaintiff in connection with the stock purchase contained material omissions or misrepresentations); *see also Merrill Lynch*, 500 F.3d at 177, 185 (reversing dismissal of counterclaim premised on breach of warranty representing that "books of account and other financial records … are in all material respects true, complete and correct, and do not contain or reflect any material inaccuracies or discrepancies …." as well as warranty that the information provided, "in the aggregate, includes all information known to the Sellers which, in their reasonable judgment exercised in good faith, is appropriate for the Purchasers to evaluate [GEM's] trading positions and trading operations," and finding that such warranties "imposed a duty on Merrill Lynch to provide accurate and adequate facts…."); *Harborview Master Fund, LP v. Lightpath Technologies, Inc.*, 601 F. Supp. 2d 537, 544 (S.D.N.Y. 2009) (holding that companies' failure to disclose operational issues and problems did not create a duty to update prior public statements made in SEC filings, but noting, in dicta, that it may constitute breach of a warranty in the stock purchase agreement that "[s]ince the date of the latest audited financial statements included in the SEC reports, there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Event.").

15

Dental was known to the Defendant prior to the sale, and to the extent that it can be considered a factor bearing upon RD Dental's business prospects, Plaintiff has stated a viable claim. *See also Pramco III, LLC v. Partners Trust Bank*, 16 Misc. 3d 351, 361, 842 N.Y.S.2d 174, 184 (Sup. Ct. Monroe Cnty. 2007), *aff'd*, 52 A.D.3d 1224, 860 N.Y.S.2d 775 (App. Div. 4th Dep't 2008) (finding sufficient breach of warranty claim premised on defendant bank's promise that it had disclosed all material documents in its possession pertaining to certain loans).

### 2. Factual Issues Preclude the Court from Granting Summary Judgment to Defendant on Dr. Kriegel's Warranty Claim.

Mrs. Donelli also argues that, assuming Plaintiff has stated a colorable breach of warranty claim, the Court should nevertheless grant summary judgment in her favor because she did not breach Section 10(c). Def.'s Mem. L. 7. Defendant argues that she "adamantly refused to give [Dr. Kriegel] an assurance that Ms. Magnotta would stay" (Reply Br. 2), and that Dr. Kriegel bought RD Dental "*knowing* that Ms. Magnotta would not sign a non-compete agreement." Def.'s Mem. L. 8 (emphasis in original), 13. According to Mrs. Donelli, because Dr. Kriegel signed the APA with "actual knowledge that [Ms. Magnotta] may leave the practice and take the patients," Ms. Magnotta's intention to leave RD Dental could not have had an impact upon Dr. Kriegel's decision to buy it, and thus could not have been a material fact. Reply Br. 2, 4-5; Def.'s Mem. L. 11-12. Mrs. Donelli further contends that, in any event, she had no knowledge of Ms. Magnotta's affirmative intention to leave RD Dental because Ms. Magnotta did not form a desire to resign until *after* Plaintiff completed his purchase. Def.'s Mem. L. 10. In opposition, Dr. Kriegel claims that the jury must resolve the parties' factual disputes, including the question of whether Ms. Magnotta's intention to leave RD Dental was a material fact bearing upon the business operations of the practice. *Id.* at 19-20.

16

The Court finds that summary judgment is inappropriate at this juncture due to the factual disputes that remain, particularly regarding the issues of whether Ms. Magnotta had an unwavering intention to leave RD Dental if Dr. Kriegel acquired it and whether such an intention would have been material to the business operations of the practice.

Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror might conclude that Ms. Magnotta's apparent dislike of Plaintiff, combined with her stated intention to leave if he purchased the practice, were facts known to the Defendant, material to the practice's business prospects, and not disclosed to Plaintiff. A reasonable trier of fact might credit Ms. Magnotta's testimony that, prior to the sale, Defendant told her that "[her] longevity with the practice was a selling point" and that she would be "partly a key to the retention of patients," which suggests that, from Defendant's view, Ms. Magnotta's fixed resolve to leave the practice might have impacted its business prospects. Harfenist Decl. Ex. F (Magnotta Dep. 19:4 – 19:23). Ms. Magnotta also testified that, prior to the sale, she told Defendant that she was "not pleased with the fact that [Defendant was] thinking about selling the practice to Dr. Kriegel." Harfenist Decl. Ex. E (Magnotta Dep. 24:5 – 24:22). Thus, Dr. Kriegel has raised an issue of fact as to whether Mrs. Donelli's non-disclosure, if proven, was "a material part of the agreed exchange." *See Pramco III, LLC*, 16 Misc. 3d at 361-62 (deeming determination of materiality question for fact finder); *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 442 (S.D.N.Y. 2006) ("whether a particular non-disclosure could, in a party's commercially reasonable judgment, have a material adverse effect on the joint venture is a question inherently difficult to resolve on summary judgment because it requires an assessment of all the facts and circumstances surrounding the situation") (internal quotation marks omitted); *Gordon P. Getty Family Trust v. Peltz*, No. 93 Civ. 3162 (DAB), 1998 WL 148425, at *10 (S.D.N.Y. Mar. 27, 1998) (denying summary

17

judgment on breach of warranty claim where contract warranted against material omissions, and facts critical to determination of materiality remained in dispute).

More fundamentally, Ms. Magnotta herself has provided inconsistent statements regarding the nature and timing of her intentions.  The Court is particularly loath to make a determination regarding *Defendant's* knowledge of Ms. Magnotta's intentions in light of the parties' concession that Ms. Magnotta's own statements are in conflict.  Reconciling any discrepancies between the statements in Ms. Magnotta's affidavit and her deposition testimony, as well as conflicts between the parties' testimony regarding their understanding of Ms. Magnotta's intentions, is a task for the jury and well beyond the province of the Court. *McClellan*, 439 F.3d at 144; *Fischl*, 128 F.3d at 55.

Additionally, Mrs. Donelli's statements to Dr. Kriegel at the closing regarding Ms. Magnotta's status as an at-will employee and refusal to sign a non-competition agreement do not constitute notice of an inaccuracy in the warranty in Section 10(c).  Nor does the record contain any evidence that Mrs. Donelli expressed any doubts to Dr. Kriegel regarding Ms. Magnotta's intentions to remain at the practice in the event that he purchased it.  Thus, this is not a case in which the seller's disclosure of the inaccuracy of certain warranted information forecloses the buyer from claiming that he believed that he was purchasing the seller's promise of truth of the warranted information.  *Rogath*, 129 F.3d at 266 (court would deem buyer's breach of warranty claims waived if seller of painting had informed buyer of doubts concerning its authenticity).[12] Moreover, because reasonable reliance is not an element of a breach of warranty claim, it is

---

[12] If a buyer closes on a contract after the seller has disclosed facts to him which would constitute a breach of warranty, the buyer cannot later assert a claim for breach of warranty.  However, "if it is merely 'common knowledge' that the facts warranted are false, or the buyer has been informed of the falsity of the facts by some third party, the buyer may prevail in his claim for breach of warranty."  *Rogath*, 129 F.3d at 264-65.

irrelevant whether Dr. Kriegel had reason to suspect that the facts warranted by Section 10(c) were inaccurate.  *See, e.g.*, *Banco de La Republica de Colombia v. Bank of New York Mellon*, No. 10 Civ. 536 (AKH), 2013 WL 3871419, at *9 (S.D.N.Y. Jul. 26, 2013) (promisor's warranties relieve promisee of any duty to investigate the warranted facts himself); *Metromedia Co. v. Fugazy*, 983 F.2d 350, 360 (2d Cir. 1992) (in warranty context, "the required reliance is established if, as here, the express warranties are bargained-for terms of the seller.").

Given that the Court cannot engage in credibility assessments, and owing to the genuine factual conflicts in the record that remain, the Court DENIES Defendant's motion for summary judgment on Plaintiff's breach of warranty claim.

### C.  Plaintiff's Fraud in the Inducement Claim (Second Cause of Action)

Under New York law, the elements of a claim for fraudulent inducement are:  (1) defendant knowingly made a misrepresentation of a material fact; (2) with the intent to deceive another party and induce that party to act on it; (3) plaintiff reasonably relied upon the representation; and (4) as a result of such reliance plaintiff suffered damage.  *Universal Antiques, Inc. v. Vareika*, 826 F. Supp. 2d 595, 607 (S.D.N.Y. 2011) (citations omitted); *GoSmile, Inc. v. Levine*, 81 A.D.3d 77, 81 (App. Div. 1st Dep't 2010).  "Fraudulent inducement involves 'a misrepresentation of *present* fact, not of future intent, collateral to a contract' and used to induce the defrauded party to sign the contract."  *Bruce v. Martin*, No. 87 Civ. 7737 (RWS), 1993 WL 148904, at *5 (S.D.N.Y. Apr. 30, 1993) (emphasis added) (citation omitted).  Either an affirmative misrepresentation or the omission of a material fact can form the basis of a fraudulent inducement claim.  *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (N.Y. 1996). Where the claim is for fraud by omission, the plaintiff "must prove additionally that the

[defendant] had a duty to disclose the concealed fact." *Merrill Lynch*, 500 F.3d at 180-81 (citation omitted).

At summary judgment as well as at trial, a plaintiff must prove each element of fraudulent inducement by "clear and convincing" evidence. *Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 219 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009); *see also Universal Antiques*, 826 F. Supp. 2d at 607. "This evidentiary standard demands 'a high order of proof,'" thus courts will not presume fraud based upon mere suspicion, or where evidence is "loose, equivocal or contradictory." *Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 638 N.Y.S.2d 11, 13 (App. Div. 1st Dep't 1996) (citation omitted).

### 1. Plaintiff's Fraud Claim Must be Dismissed Because He Cannot Prove Reasonable Reliance.

Dr. Kriegel alleges that Mrs. Donelli fraudulently induced him to enter the APA by:  (1) failing to disclose that Ms. Magnotta intended to depart RD Dental, and that she would leave soon after the sale; (2) failing to disclose that non-competition agreements signed with prospective purchasers excluded the hiring of Ms. Magnotta; (3) failing to disclose that Ms. Magnotta had been moving patients to other dental practices before Dr. Donelli's death; (4) failing to disclose that Ms. Magnotta had access to RD Dental's email system, files, and all of the patients' contact information; and (5) "specifically misrepresent[ing] that employees of the Practice would stay on after the sale … and that she was not aware of any adverse circumstances affecting the value of the Practice." Compl. ¶ 36. Yet, Plaintiff concedes that, at the closing, Mrs. Donelli told him that Ms. Magnotta "was an at-will employee" and that she "could not force [Ms. Magnotta] to do anything." Pl.'s Cntrstmt. ¶ 17. Indeed, Dr. Kriegel testified that he knew that all employees of RD Dental were at-will employees. *Id.*  ¶ 18; Feureisen Decl. Ex. M

(Kriegel Dep. 88:4 – 88:6).  Plaintiff nonetheless claims that a "radical difference" exists between Dr. Kriegel's knowledge of Ms. Magnotta's at-will employment status and Mrs. Donelli's purported "knowledge that [Ms. Magnotta] would not stay with the practice if Dr. Kriegel closed the transaction."  Pl.'s Opp. 20.

Relying primarily upon the New York Court of Appeals' decision in *Ziff-Davis*, Dr. Kriegel argues that, because the warranty in Section 10(c) absolved him of any duty to investigate whether Ms. Magnotta would remain at the practice, he was entitled to rely upon the representations made by Mrs. Donelli in the APA.  Pl.'s Opp. 18-19, 21.  Dr. Kriegel further argues, without citation to facts in the record, that nothing he could have done would have changed the result of the transaction because Mrs. Donelli "specifically represented that she did not know of any adverse facts affecting the practice and such knowledge was peculiar to her, [Mr.] Mansfield and [Ms. Magnotta]."  Pl.'s Opp. 21.

Unlike the context of a claim for breach of warranty, reasonable reliance is an essential element of fraudulent inducement.  *See, e.g.*, *Marciano v. DCH Auto Grp.*, No. 11 Civ. 9635 (KMK), 2014 WL 1612976, at *7 (S.D.N.Y. Mar. 31, 2014) (collecting cases); *Frank Crystal & Co., Inc. v. Dillmann*, 84 A.D.3d 704, 925 N.Y.S.2d 430, 431 (App. Div. 1st Dep't 2011).  "[I]t has long been the law that 'the analysis of reliance in a tort action based on fraud or misrepresentation [tort reliance] differs from the analysis of reliance in actions for breach of express contractual warranties [warranty reliance].'"  *Loreley Fin. (Jersey) No. 4 Ltd. v. UBS Ltd.*, 42 Misc. 3d 858, 978 N.Y.S.2d 615, 621 (Sup. Ct. N.Y. Cnty. 2013) (citation omitted). Given that it is an indispensable element of fraudulent inducement, if a plaintiff cannot establish reasonable reliance, summary judgment is warranted.  *Dillman*, 84 A.D.3d at 704 (citing *Shea v. Hambros PLC*, 244 A.D.2d 39, 46, 673 N.Y.S.2d 369 (App. Div. 1st Dep't 1998)).

21

The Court finds that Plaintiff's knowledge of Ms. Magnotta's status as an at-will employee precludes him from bringing a fraudulent inducement claim based upon any purported representation or omission made by Ms. Donelli relating to Ms. Magnotta's intention to remain employed by the practice.  As an at-will employee, Ms. Magnotta was free to end her employment at any time, just as her employer was free to terminate her; "[t]hat is the essence of the doctrine of employment-at-will."  *Skillgames, LLC v. Brody*, 1 A.D.3d 247, 250-51, 767 N.Y.S.2d 418, 421-22 (App. Div. 1st Dep't 2003) (citing *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (N.Y. 1983)).  Any oral representations made by Defendant as to Ms. Magnotta's continued employment could not have altered the at-will nature of her employment.  *Hobler v. Hussain*, 111 A.D.3d 1006, 975 N.Y.S.2d 212, 215 (App. Div. 3d Dep't 2013).  Accordingly, as a matter of law, Plaintiff cannot establish that it would have been reasonable for him to rely on any representations regarding Ms. Magnotta's continued employment, whether made by Mrs. Donelli or Ms. Magnotta herself.  *Skillgames*, 1 A.D.3d at 250-51 (dismissing fraudulent inducement claim because defendant's status as an at-will employee "render[ed] unreasonable [his employer's] claimed reliance on [his] alleged representation (or promise) that he was 'committed to continued employment'"); *Dillmann*, 925 N.Y.S.2d at 431-32 (citations omitted) (the plaintiff "simply [could] not satisfy the requirement of demonstrating detrimental reliance, since plaintiff expressly retained [the defendant] as an at-will employee with an unfettered right to terminate her employment at any time").[13]

---

[13] *See also, e.g.*, *Wurtsbaugh v. Banc of Am. Sec. LLC*, No. 05 Civ. 6220 (DLC), 2006 WL 1683416, at *7 (S.D.N.Y. June 20, 2006) (deeming reliance on oral representations concerning the term of employment for an at-will employee, who worked at plaintiff company that was acquired by defendant employer, unreasonable); *Berger v. Roosevelt Inv. Grp. Inc.*, 28 A.D.3d 345, 346, 813 N.Y.S.2d 419, 420 (N.Y. 2006) ("plaintiff could not establish reasonable reliance on any alleged misrepresentation of defendant with respect to the length of his employment, since he was an at-will employee"); *Meyercord v. Curry*, 38 A.D.3d 315, 316-17, 832 N.Y.S.2d 29, 31 (App. Div.

While *Skillgames* involved fraud claims premised on representations allegedly made by the employees themselves, this distinction does not change the analysis here, and if anything, renders Dr. Kriegel's purported reliance on Mrs. Donelli's alleged non-disclosure all the more unreasonable.  Dr. Kriegel knew that Ms. Magnotta was an at-will employee, concedes that he did not endeavor to speak with her regarding her employment plans, and attempted—but failed— to acquire a non-competition agreement that would limit her ability to leave RD Dental.  *See* Feureisen Decl. Ex. M (Kriegel Dep. 77:12 – 77:16).  Dr. Kriegel's reasonable reliance claim is also unsustainable in light of the plain terms of Section 1.7 of the APA, wherein he agreed to terminate all employees of RD Dental on the closing date, and then rehire them at his sole discretion.  *Marciano v. DCH Auto Grp.*, 2014 WL 1612976, at *7 (citing *Dabriel, Inc. v. First Paradise Theaters Corp.*, 99 A.D.3d 517, 952 N.Y.S.2d 506, 511 (App. Div. 1st Dep't 2012) (dismissing fraudulent inducement claim for lack of reasonable reliance because, among other reasons, court deemed it unreasonable to rely on oral representations that contradicted the express terms of the agreement)).

The Court therefore GRANTS Defendant's motion for summary judgment and dismisses Plaintiff's claim for fraudulent inducement.

### 2. In the Alternative, Dr. Kriegel's Fraudulent Inducement Claim Must Be Dismissed as Duplicative of His Contract Claim.

Mrs. Donelli also argues that Plaintiff's fraudulent inducement claim must be dismissed as duplicative of his contract claim.  Def.'s Mem. L. 8 (citing, *e.g.*, *Banco de La Republica de Colombia*, 2013 WL 3871419, at *10).  Plaintiff characterizes his fraudulent inducement claim thusly:  "that he was fraudulently induced into entering the contract by [Defendant's]

_____

1st Dep't 2007) (in light of at-will status, "any reliance on representations of future intentions, such as job security or future changes, would be deemed unreasonable as a matter of law").

representations contained in [Section] 10(c) … and [Defendant's] failure to disclose the fact that [Ms. Magnotta] would not remain at the practice" if Plaintiff purchased it.  Pl.'s Opp. 23 n.7. Plaintiff's breach of warranty claim is likewise based on his contention that Defendant failed to disclose that Ms. Magnotta would not remain at the practice if he bought it.  *Id.* at 12.  Indeed, the Complaint recites the same factual allegations as bases for Plaintiff's breach of warranty and fraud claims.  *Compare* Compl. ¶ 27 *and* ¶ 35.  Plaintiff concedes that there is "substantial overlap" between his claims, but, without citing any authority, argues that he need not choose between them until trial.  Pl.'s Opp. 23.

Under New York law, a fraud-based claim must be "sufficiently distinct from [a] breach of contract claim" where it stems from an alleged breach of contract.  *Bridgestone/Firestone, Inc. v. Recovery Credit Svcs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted).  Where brought in tandem with a contract claim, the fraud claim may only proceed where it will "(i) demonstrate a legal duty separate from the duty to perform under the contract"; (ii) "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract"; or (iii) "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."  *Id.* (citations omitted). Indeed, "[b]reaching a contract does not constitute fraud unless some legal duty to the plaintiff that is independent of the contract is violated.  Any such independent duty must spring from circumstances extraneous to, and not constituting, elements of the contract itself."  *GS Equities, Ltd. v. Blair Ryan Co.*, No. 08 Civ. 1581 (CM), 2011 WL 3278909, at *6 (S.D.N.Y. July 26, 2011).

The Court finds that Plaintiff has failed to satisfy any of the three *Bridgestone* factors and accordingly, his fraud claim must be dismissed as duplicative.  With respect to the first *Bridgestone* factor, Plaintiff makes no allegation that Defendant owed a duty to Plaintiff except

24

as set forth in the APA.  Rather, Plaintiff explicitly premises his fraudulent inducement claim on

warranties set forth in Section 10(c).  Pl.'s Opp. 12, 23.  Thus, Plaintiff cannot satisfy this factor.

*See DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 324 (S.D.N.Y. 2002); *Pramco III, LLC*, 16

Misc. 3d at 367, 842 N.Y.S.2d at 188 (duty independent from contract required to support fraud

in the inducement claim); *Davidson Metals Corp. v. Marlo Dev. Co.*, 238 A.D.2d 463, 464, 656

N.Y.S.2d 673, 674 (App. Div. 2d Dep't 1997) (holding that the lower court properly dismissed

fraud cause of action as it was not based on any legal duty owed outside of the agreement itself,

"but was rather based solely upon a warranty contained in Article 48 of the agreement").[14]

---

[14] Although Plaintiff alleges, in conclusory fashion, that Mrs. Donelli was in a superior position of knowledge to Dr. Kriegel, and had an obligation to disclose "special facts which were adverse to the viability of the Practice" (Compl. ¶ 37), he does not cite any basis for Mrs. Donelli's purported duty to disclose aside from the warranty in the APA. *See, e.g.*, *Current Med. Directions, LLC v. Salomone*, 26 Misc. 3d 1229(A), 907 N.Y.S.2d 99 (Sup. Ct. N.Y. Cnty. 2010) (dismissing fraud claim as duplicative where plaintiff failed to allege or identify a legal duty owed to it by the defendant, other than the duty owed under the contract); *Greenberg v. Chrust*, 198 F. Supp. 2d 578, 585 (S.D.N.Y. 2002) ("[P]arties to arm's length commercial contracts do not owe each other a fiduciary obligation.").

Moreover, Plaintiff has failed to adduce any evidence in support of his conclusory allegation that the so-called "special facts" doctrine of New York law should apply here.  The special facts doctrine, under which a party may have a duty to disclose information particularly within its knowledge, even in the absence of a fiduciary duty, requires satisfaction of a two-prong test:  (1) that a material fact was information peculiarly within the knowledge of the defendant, and (2) that the information was not such that could have been discovered by plaintiff through the exercise of ordinary intelligence.  *See, e.g.*, *Plaintiffs' State & Sec. Law Settlement Class Counsel Entwistle & Cappucci LLP v. Bank of New York Mellon*, 985 N.Y.S.2d 398 (Sup. Ct. N.Y. Cnty. 2014) (citing, *e.g.*, *Jana L. v. West 129th St. Realty Corp.*, 22 A.D.3d 274, 277, 802 N.Y.S.2d 132 (App. Div. 1st Dep't 2005)).  Dr. Kriegel's own factual assertions, if anything, disprove both prongs.  In addition to testifying that he did not ever endeavor to discuss a non-competition agreement directly with Ms. Magnotta (Feureisen Decl. Ex. M. (Kriegel Dep. 77:12 – 77:16)), Dr. Kriegel testified that he never had any discussion with the RD Dental staff regarding the future of the practice or the terms of their employment (*id.* at 35:23 – 36:5), and that his "review" of the terms and conditions of employment for RD Dental's employees solely consisted of "ask[ing] Charles Mansfield."  *Id.* at 36:6 – 37:18.  Yet, Dr. Kriegel's own affidavit affirmatively states that two RD Dental staff members, Sally Ruggiero and Caitlin Doyle, told him that Ms. Magnotta "had been vocal about the fact that if [he] purchased the practice she would not stay on at RD Dental."  Kriegel Aff. ¶ 16.  Accordingly, even if the Court assumes that Ms. Magnotta's intention regarding her continued employment was a material fact, the Court can neither conclude that it constituted information exclusively within Defendant's knowledge, nor that it would have been difficult for Dr. Kriegel to uncover through ordinary intelligence.  *See, e.g.*, *88 Blue Corp. v. Reiss Plaza Associates*, 183 A.D.2d 662, 664, 585 N.Y.S.2d 14, 16 (App. Div. 1st Dep't 1992) ("[w]here a party has means available to him for discovering, 'by the exercise of ordinary intelligence,' the true nature of a transaction he is about to enter into, 'he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by

With respect to the second *Bridgestone* factor, in assessing whether an alleged fraudulent representation should be considered "collateral or extraneous to the contract," "as a matter of both logic and law, the primary consideration … is whether the contract itself speaks to the issue." *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 426-27 (S.D.N.Y. 2004). Courts examine "whether the alleged misrepresentation was warrantied or not mentioned by the contract; whether it was the misstatement of a present fact which induced entry into the contract; whether it constituted the failure to perform a duty specified in the contract; and whether it is generally duplicative of the breach of contract claim." *Id.* at 428.

While Plaintiff premises his fraudulent inducement claim upon purported misstatements of present fact, "it is not sufficient that the alleged misrepresentations are about then-present facts; rather, they also must be 'extraneous to the contract *and* involve a duty separate from or in addition to that imposed by the contract.'" *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11 Civ. 7426 (RWS), 2012 WL 3065929, at *9 (S.D.N.Y. Jul. 25, 2012) (quoting *The Hawthorne Grp., LLC v. RRE Ventures*, 7 A.D.3d 320, 323-24, 776 N.Y.S.2d 273, 276 (App. Div. 1st Dep't 2004)). From Plaintiff's view, the *exact* representations made by Defendant in the warranty in Section 10(c) also fraudulently induced Plaintiff's entry into the contract; therefore, his claim is wholly duplicative. *Id.* (dismissing fraud claim as duplicative of breach of warranty claim where fraud claim merely "recite[d] the purported breaches of representations and warranties in the [contract]" and did not allege any unique damages); *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12 Civ. 6017 (KBF), 2013 WL 342922, at *3-*4 (S.D.N.Y. Jan. 18, 2013)

misrepresentations'"); *Rodas v. Manitaras*, 159 A.D.2d 341, 343 (App. Div. 1st Dep't 1990) (a purchaser that fails to take advantage of its access to information about an acquisition "may be truly said to have willingly assumed the business risks that the facts may not be as represented").

finding that "any misrepresentation made as to the condition of the products plaintiffs received was … intrinsic to its contractual obligations and cannot separately support a plausible fraud claim" where warranty affirmed that no misrepresentations would be made regarding products); *DynCorp*, 215 F. Supp. 2d at 325-26 (determining that allegations of fraud could not be considered collateral or extraneous to the contract because the warranties in the parties' agreement covered the alleged false representations).[15]  Moreover, the Court finds that Plaintiff's contract and fraud claims are duplicative because they arise from the same allegations and necessarily require the same proof.  *Banco de la Republica*, 2013 WL 3871419, at *10.

With respect to the third and final *Bridgestone* factor, Plaintiff does not claim any special damages resulting from the alleged fraud, and indeed explicitly seeks identical relief for his fraud and contract claims:  rescission of the APA, restoration of the parties to their positions prior to the entry of the APA, and consequential damages.  Compl. ¶ 39.  Thus, this factor also justifies

---

[15] In *First Bank of the Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 690 N.Y.S.2d 17, 21 (App. Div. 1st Dep't 1999), the Appellate Division, First Department, held that "a misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty."  *Accord Merrill Lynch*, 500 F.3d at 184; *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 294, 928 N.Y.S.2d 229, 234 (App. Div. 1st Dep't 2011) ("It is of no consequence that some of the allegedly false representations are also contained in the agreements as warranties and form a basis of the breach of contract claim.").  However, recent cases have distinguished *First Bank* and its progeny as inapplicable to situations where, as here, the fraud claim is premised *entirely* upon the same warranty that also underlies the contract claim.  *See, e.g.*, *Torchlight Loan Servs.*, 2012 WL 3065929, at *10 ("Here, unlike *First Bank*, the alleged misrepresentations are expressly addressed by contractual representations and warranties"); *In re Enron Corp.*, No. 04 Civ. 1367 (NRB), 2005 WL 356985 (S.D.N.Y. Feb. 15, 2005) (citing *J.E. Morgan Knitting Mills, Inc. v. Reeves Brothers, Inc.*, 243 A.D.2d 422, 423, 663 N.Y.S.2d 211, 211 (App. Div. 1st Dep't 1997)) ("Plaintiffs' cause of action for fraud, which alleges that defendants knew at the time of contract execution that their warranty therein against undisclosed liabilities burdening the property was false, was properly dismissed as duplicative of plaintiffs' [contract claim].  The fraud alleged is based on the same facts as underlie the contract claim and is not collateral to the contract and no damages are alleged that would not be recoverable under a contract measure of damages.").  As the court in *In re Enron Corp.* reasoned, *First Bank* should be limited to its facts:  situations where the alleged fraudulent misrepresentations pertain to matters addressed by the warranty *as well as* matters that the warranty does not cover. 2005 WL 356985, at *11-*12; *see also AMBAC Assur. Corp. v. First Franklin Fin. Corp.*, 40 Misc. 3d 1214(A), 975 N.Y.S.2d 707 (Sup. Ct. N.Y. Cnty. 2013) (describing rule as that, if fraud claims are entirely based on the same representations as breach of warranty claims, they should be dismissed as duplicative, but if only *some* of the allegedly false representations are also contained in the warranties, the fraud and contract claims may coexist).

dismissal of Plaintiff's fraud claim.  *See, e.g.*, *Manas v. VMS Associates, LLC*, 53 A.D.3d 451, 454, 863 N.Y.S.2d 4 (App. Div. 1st Dep't 2008).

Accordingly, the Court finds that Plaintiff's fraudulent inducement claim could be dismissed on the alternative ground that it is duplicative of his contract claim.  *J.E. Morgan Knitting Mills*, 243 A.D.2d at 423, 663 N.Y.S.2d 211.

### D.  Remedies

Plaintiff seeks rescission "and/or rescissory damages."  Rescission is the unmaking of a contract; its effect "is to declare [a] contract void from its inception and to put or restore the parties to status quo."  *Lenel Sys. Int'l, Inc. v. Smith*, 106 A.D.3d 1536, 1537-38, 966 N.Y.S.2d 618, 620 (App. Div. 4th Dep't 2013) (citation omitted); *see also, e.g.*, *United States ex rel. Taylor v. Gavello*, No. 03 Civ. 8762 (PAC), 2005 WL 2978921, at *5 n.10 (S.D.N.Y. Nov. 4, 2005).  Logistically, where, as here, the defendant has sold something to the plaintiff for money, "the steps leading to return to the status quo are streamlined:  generally the plaintiff must tender the subject of the sale to the defendant and the defendant must tender to the plaintiff the sale price plus interest, minus whatever direct value the plaintiff has received from the transaction."  *Ajettix Inc. v. Raub*, 9 Misc. 3d 908, 920, 804 N.Y.S.2d 580, 593 (Sup. Ct. Monroe Cnty. 2005) (citation omitted).

Rescissory damages, which are governed by restitution principles, seek to restore "the reasonable value of any benefit conferred upon the defendant by the plaintiff."  *Waxman v. Envipco Pick Up & Processing Servs., Inc.*, No. 02 Civ. 10132 (GEL), 2006 WL 236818, at *4 (S.D.N.Y. Jan. 17, 2006).  Thus, even though contract price is probative of the value received, "the reasonable value of the benefit unjustly received, not the contract price, determines the amount of an award in restitution."  *Id.* (citation and internal quotation marks omitted).  The

28

parties agree that, if awarded, Plaintiff's rescissory damages are limited to the difference between the purchase price and the actual value of RD Dental at the time of the sale.  Def.'s Reply 7.

### 1. Rescission

Defendant argues that the Court should bar Plaintiff from seeking rescission because he may not "reap the benefit of the bargain" and also recover the purchase price of RD Dental, as it would result in a windfall.  Def.'s Mem. L. 17.  According to Defendant, as of the time of Plaintiff's deposition—nineteen months after Ms. Magnotta's resignation—Plaintiff admitted that he retained over 350 patients of the 619 patient files that he purchased from RD Dental. Defendant also argues that rescission is "impossible" because RD Dental cannot be returned to the status quo *ante*; she surrendered RD Dental's old lease, many employees have left, and Defendant herself is not a dentist, thus, she argues, Plaintiff's recovery must be limited to monetary damages.  Def.'s Mem. L. 18.

Under New York law, it has long been established that, in order to justify the remedy of rescission, a breach of contract must be "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Callaman v. Powers, et al.*, 199 N.Y. 268, 284, 92 N.E. 747 (N.Y. 1910); Pl.'s Opp. 10.  Indeed, rescission is an "extraordinary remedy" that is only appropriate "when a breach may be said to go to the root of the agreement between the parties."  *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989) (citing *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir. 1980)); *see also MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*, 105 A.D.3d 412, 413, 963 N.Y.S.2d 21 (App. Div. 1st Dep't 2013) (rescission is a "very rarely used equitable tool"). The failure to perform the contract need not be complete, however; it is sufficient that the failure

"leaves the subject of the contract substantially different from what was contracted for."  *K.M.L. Labs. Ltd. v. Hopper*, 830 F. Supp. 159, 163 (E.D.N.Y. 1993).  If the parties' intent can be determined by written agreements, then it is a legal question that courts may resolve on summary judgment.  *Id.* (citing *Mallad Construction Corp. v. County Federal Savings and Loan Assoc'n*, 32 N.Y.2d 285, 291, 344 N.Y.S.2d 925, 930, 298 N.E.2d 96, 100 (N.Y. 1973)).

The Court finds that it cannot resolve the issue of whether Dr. Kriegel is entitled to rescission at this juncture.  Dr. Kriegel is steadfast in his claim that, had he known of Ms. Magnotta's intentions to depart the practice, he would have never purchased it.  It is clear from the parties' written agreements that Mrs. Donelli intended to sell, and Dr. Kriegel intended to purchase, "[t]he goodwill and going concern value of the Practice, together with the patient charts," as well as the physical space occupied by RD Dental and the right to use its name.  *See* APA § 1.2; Rider § 17.  However, in light of the presently irresolvable factual disputes regarding the existence and materiality of Mrs. Donelli's alleged misrepresentations, discussed *supra*, the Court cannot determine whether the alleged misrepresentations breached the APA, much less whether any such breach was "so substantial that it defeated the object of the parties in making the [Agreement]."  *Pramco III, LLC*, 52 A.D.3d at 1225, 860 N.Y.S.2d 775, 777 (App. Div. 4th Dep't 2008) (citing *Lenel Sys. Intl., Inc. v. Smith*, 34 A.D.3d 1284, 1285, 824 N.Y.S.2d 553 (App. Div. 4th Dep't 2006)) (triable issues of fact regarding breach, and whether breach substantially defeated purpose of contract, precluded summary judgment on rescission); *cf. K.M.L. Labs*, 830 F. Supp. at 163 (holding that the breach of a warranty guaranteeing "that no violations existed that would reduce [the company's] ability to carry out its business as it was carried out at the time of the purchase agreement" constituted a permissible basis for rescission

30

of the purchase agreement because the "inability to transfer a viable company" went to the root of a contract for sale of a biomedical waste disposal company).

Moreover, for the same reasons that the Court is unable to determine the propriety of the remedy at this juncture, the Court finds that rescission is not, as a matter of law, necessarily "impossible" in this case.  *See Ajettix*, 9 Misc. 3d 908, 922, 804 N.Y.S.2d 580, 594; *K.M.L. Labs*, 830 F. Supp. at 164 (rescissory relief may be appropriate, even where it "may not result in the return of a thriving business to the [defendant]"); Restatement (Second) of Contracts § 384 (1981) ("[m]ere depreciation in market value … is not such a change as will preclude restitution").  The availability of rescission depends upon the yet to be determined significance of the breach, and "when rescission is predicated on a breach of contract, the status quo requirement relaxes as the breach becomes more serious."  *K.M.L. Labs*, 830 F. Supp. at 164. Rescissory damages, "the economic equivalent of rescission in a circumstance in which rescission is warranted, but not practicable," may also be available to Dr. Kriegel as an alternative form of relief.  *Syncora Guarantee Inc. v. Countrywide Home Loans, Inc.*, 36 Misc. 3d 328, 343-44, 935 N.Y.S.2d 858, 869-70 (Sup. Ct. N.Y. Cnty. 2012) (collecting cases); *accord Assured Guar. Mun. Corp. v. RBS Sec. Inc.*, 13 Civ. 2019 (JGK), 2014 WL 1855766 (S.D.N.Y. May 8, 2014).   However, in the absence of a more complete factual record, it is premature for the Court to consider what equitable relief, if any, is warranted.  *Syncora Guarantee Inc. v. EMC Mortgage Corp.*, 874 F. Supp. 2d 328, 340 (S.D.N.Y. 2012).

Accordingly, the Court DENIES Defendant's motion for summary judgment on rescission grounds.

### 2.  Damages

Mrs. Donelli argues that Dr. Kriegel's recovery must be limited to nominal damages because he has failed to disclose any damages calculations relating to the assets of the practice, nor has he presented an expert to opine on the value of the practice, thus he will not be able to prove that RD Dental was worth an amount other than the sale price.  Def.'s Mem. L. 19-21.

Plaintiff's Rule 26 disclosures, with respect to computation of damages, state:  "N/A – Plaintiff is seeking rescission of the contract of sale."  Def.'s Mem. L. 21 (citing Feureisen Decl. Ex. P).  Dr. Kriegel does not contest that he failed to disclose a computation of damages; rather, he submits that "there are no computations for [him] to make" since it is undisputed that he purchased the practice for $300,000.00.  Pl.'s Opp. 16.  Without citing any authority, Plaintiff incorrectly asserts that, because he is pursuing rescission, the burden of proving damages is not his own.[16]  *Id.*  However, Dr. Kriegel submits that he has provided "more than 200 pages" of financial documents relating to the value of the practice during discovery, including income statements, expense statements, bank statements, records of deposit, and Quickbooks entries, which, presumably, could be used to prove consequential or rescissory damages.  *Id.*

Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure requires a party to disclose, without awaiting a discovery request, "a computation of each category of damages claimed" and the evidentiary material upon which such computations are based.  Fed. R. Civ. P. 26(a)(1)(A)(iii); *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 318

---

[16] Dr. Kriegel claims that the Complaint provided Mrs. Donelli with "unequivocal notice" that he is only pursuing rescission, rescissory damages or consequential damages, and not compensatory damages.  Pl.'s Opp. 15.  Plaintiff bears the burden of proving his entitlement to damages.  *Design Strategy*, 469 F.3d at 293–94; *see also, e.g.*, *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 193, 886 N.E.2d 127, 131 (N.Y. 2008) ("Consequential damages, designed to compensate a party for reasonably foreseeable damages, 'must be proximately caused by the breach' and must be proven by the party seeking them." (citations omitted)).

(S.D.N.Y. 2008).  Under Rule 37(c)(1) of the Federal Rules, a party who fails to disclose information as required by Rule 26(a) may not offer the information as evidence unless its failure was "substantially justified or is harmless."  *Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*, No. 08 Civ. 2540 (DLI) (JMA), 2011 WL 1239867, at *4 (E.D.N.Y. Mar. 30, 2011) (citing Fed. R. Civ. P. 37(c)(1)).

Nonetheless, the Second Circuit has held that preclusion of evidence is discretionary, and not mandatory, "even if 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'"  *Id.*  (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)); *Reilly v. NatWest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (Rule 37 affords courts wide discretion with respect to sanctions).  In deciding whether to exercise its discretion to preclude evidence under Rule 37, courts consider:  (1) the party's explanation for its failure to comply with the disclosure requirement; (2) the importance of the evidence; (3) the prejudice suffered by the opposing party as a result of the failure; and (4) the possibility of a continuance.  *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).  Bad faith need not be shown.  *Design Strategy*, 469 F.3d at 296.

Here, certain factors militate in favor of exclusion, while others do not.  With respect to the first factor, Dr. Kriegel does not even acknowledge his failure to provide a damages calculation because he asserts that Rule 26 does not obligate him to provide a damages estimate in the first instance, aside from stating that he is seeking rescission.  However, the second factor weighs in Plaintiff's favor, given that, if rescission is unavailable to him, evidence of damages will be crucial to his ability to recover.  Regarding the third factor, the prejudice to Mrs. Donelli, if any, is minimal.  In response to Defendant's discovery requests, Dr. Kriegel represents that he has identified and disclosed documents concerning the finances of the practice, the transfer of

patients from the practice, and the "significant loss of the [p]ractice."  *See* Harfenist Decl. Ex. I.
The documents produced in discovery constitute the universe of evidence on which Dr. Kriegel
may rely to prove damages.  In *Design Strategy, Inc. v. Davis*, 469 F.3d at 296, the district court
precluded the plaintiff from submitting evidence of damages because the plaintiff failed to
disclose both a calculation of damages (there, lost profits) and the documents supporting that
calculation, discovery had long ago closed, and the defendants would suffer severe prejudice.

Here, Mrs. Donelli already has all of the supporting documentation pertaining to the
value of the practice which may be used by Plaintiff at trial, and has had an opportunity to
review it.  It is clear from his pleadings that Dr. Kriegel seeks, at most, $300,000.00:  the
purchase price of RD Dental.  In some cases, courts have opted to preclude damages based on a
party's failure to disclose calculations even where the party disclosed the underlying documents
during discovery.  *See, e.g.*, *Kodak Graphic Commc'ns Canada Co. v. E.I. Du Pont de Nemours
& Co.*, No. 08 Civ. 6553 (FPG), 2013 WL 5739041, at *3 (W.D.N.Y. Oct. 22, 2013) (Rule 26,
"[b]y its plain terms, … requires more than simply providing a mountain of documents to your
opponent.  Instead, it requires a *computation* of damages to be provided ….") (emphasis in
original); *Design Strategy*, 469 F.3d at 294.  However, the Court is mindful of the fact that
preclusion is a severe sanction, and of "the importance of imposing such a sanction sparingly."
*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147,
161-63 (S.D.N.Y. 2012) (imposing sanction of reasonable attorney's fees and costs associated
with extension of discovery in lieu of preclusion); *Joseph S. v. Hogan*, No. 06 Civ. 1042 (BMC)
(SMG), 2011 WL 2848330, at *4 (E.D.N.Y. July 15, 2011) (characterizing *Design Strategy* and
its progeny as representing "the limited proposition that the defendant must be aware of the
damages that are asserted against him and the way in which they were computed").

34

Thus, given the importance of the evidence here and the minimal prejudice to Mrs. Donelli, the Court finds that precluding Dr. Kriegel from offering evidence of damages at trial is an unduly harsh sanction.  However, in light of the limited evidence of damages proffered by Plaintiff, he proceeds at his own peril in attempting to meet his burden of proving the relief to which he may be entitled.

Accordingly, Defendant's motion for summary judgment is also DENIED on that basis.[17]

## III.   Defendant's Motion for Attorneys' Fees

As the Court has denied Defendant's motion for summary judgment on Plaintiff's breach of contract claim, it need not reach the issue of attorney's fees.  Accordingly, Defendant's motion for attorney's fees is DENIED, without prejudice.

## IV.   Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is DENIED in part and GRANTED in part.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 13.  The parties are instructed to appear for a status conference on July 15, 2014 at 10:30 a.m., at which time a schedule for pretrial submissions, final pretrial conference date and trial date will be set.

It is SO ORDERED.

Dated:   June 30, 2014
         New York, New York

Edgardo Ramos, U.S.D.J.

---

[17] Regarding Defendant's argument that Dr. Kriegel has failed to establish his damages by a reasonable certainty because he has not provided an expert report, the Court notes that while it is up to Plaintiff to provide competent proof of his claims, an expert is not necessarily required to establish damages by "reasonable certainty."  *See, e.g., Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992) (the plaintiff need not prove his amount of loss with "mathematical precision"); *cf. Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 193, 886 N.E.2d 127, 130 (N.Y. 2008) (proof of consequential damages cannot be speculative or conjectural).